ARTURO IZQUIERDO, demandante y apelado, *v.* BANCO INDUS-
TRIAL DE PUERTO RICO, demandado y apelante.

No. 5197.—*Sometido:* Marzo 17, 1931. *Resuelto:* Enero 15, 1932.

*Campos & Romero,* abogados del apelante; *R. Rivera Zayas,* abogado
del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

El Banco Masónico de Puerto Rico, que más tarde se con-
virtió en el Banco Industrial de Puerto Rico, instituyó un
procedimiento en la Corte Municipal de San Juan contra
Arturo Izquierdo, Antonio Díaz y Félix Monclova para reco-
brar una suma algo mayor de $100. Para asegurar la efec-
tividad de la sentencia el demandante embargó una casa de
concreto, sita en la calle José de Diego del Municipio de

Toa Alta, perteneciente a Arturo Izquierdo o de la cual él tenía la propiedad sujeta a una posible reclamación del municipio. El demandante obtuvo sentencia y para la ejecución de la misma se señaló la subasta para el 3 de noviembre de 1928, a las 2 p. m.

En el ínterin las partes estaban en negociaciones para llegar a una transacción. Aparentemente no llegaron a un acuerdo respecto a los términos de la transacción hasta la mañana misma del 3 de noviembre, en que la venta en pública subasta había sido señalada para las dos de la tarde. Se admite aparentemente por el apelado Arturo Izquierdo que no se llegó al convenio definitivo como hasta las diez de la mañana de dicho 3 de noviembre. El contrato debía reducirse a una escritura formal. Esta fué redactada entre once y doce de la mañana y firmada inmediatamente por el deudor Izquierdo, por la esposa del deudor como a la una de la tarde, y por el banco como a las tres. Mientras las negociaciones estaban pendientes en dicho día el Sr. Izquierdo solicitó del Sr. Schlüter, Presidente del Banco Industrial, que hiciera suspender la venta judicial señalada para las dos de la tarde. Schlüter envió a Izquierdo donde Campos del Toro, abogado del banco. Este último dió instrucciones a una de las empleadas del banco para que llamara al márshal de la corte municipal de Toa Alta y le pidiera que suspendiese la subasta. Fué imposible establecer comunicación telefónica con Toa Alta. Entonces Campos del Toro envió un telegrama al márshal dándole instrucciones de suspender la subasta. Hubo prueba tendente a demostrar que Arturo Izquierdo pidió a Campos del Toro que le acompañara a Toa Alta, lo cual no hizo dicho abogado, evidentemente en la teoría de que el márshal no procedería a celebrar la subasta. Sucedió que Campos del Toro tenía en su poder los certificados de la publicación de los edictos y por tanto creía que el márshal no celebraría la subasta sin que se le mostraran primeramente tales certificados. En esto Campos del Toro

estaba equivocado, ya que a las dos de la tarde del sábado 3 de noviembre de 1928 el márshal vendió la finca valorada finalmente quizá en 5 ó $6,000, por unos $200. La venta fué inscrita en el registro muy poco después y la finca así inscrita fué vendida por el comprador a un tercero. Este pleito fué instituído por Arturo Izquierdo contra el Banco Industrial por no obtener la suspensión de la subasta y por permitir que surgiera un título de la propiedad a favor de un tercero, contra quien era difícil, si no imposible, incoar un procedimiento.

La Corte de Distrito de San Juan, donde el pleito de Izquierdo fué radicado, resolvió a favor del demandante.

■ Conforme hemos dicho, las partes convinieron en una escritura formal de transacción, según la cual el pago del importe de la sentencia, más las costas ($145.69), fué prorrogado por seis meses y garantizado con una hipoteca sobre la misma finca. La escritura no contenía cláusula alguna respecto a que la subasta debía ser suspendida, mas nos inclinamos a convenir con la corte inferior en que el dejar de mencionar la escritura este hecho no podía favorecer al banco apelante si tal convenio formal hacía que el banco fuera responsable a Arturo Izquierdo por haber dejado de suspender la venta en pública subasta. En otras palabras, si la transacción celebrada en la mañana del 3 de noviembre de 1928, impuso al banco el deber de hacer diligencias activas para suspender la venta, el hecho de que la escritura no mencionara este deber no hacía diferencia alguna. Quizá baste agregar que el banco, después de celebrada la subasta, hizo gestiones para anular la misma radicando una moción ante la Corte Municipal de San Juan. La corte de distrito resolvió que era una obligación inherente al banco demandado suspender la venta; que si el banco celebró una transacción con Arturo Izquierdo surgió una obligación clara por parte del banco para suspender y no continuar los procedimientos. Más o menos la teoría es que

el márshal de Toa Alta no era otra cosa que la continuación de la personalidad del banco, y, por tanto, que el banco era responsable de los actos de su agente; que el objeto de la transacción era suspender la subasta; que el banco dejó de suspender la subasta y que fué negligente. Ciertas posiciones técnicas asumidas por el banco fueron declaradas sin lugar por la corte, correctamente con toda probabilidad, y no las discutiremos.

De lo que no se nos ha convencido ni por la corte inferior ni por el apelado es que el banco fuera en realidad negligente. o aun si bajo las circunstancias surgió algún deber legal de de hacer algo más de lo que el banco realmente hizo en este caso.

Asumiendo que surgió alguna obligación legal por parte del banco para tratar de suspender la venta, resolvemos que el banco hizo todo lo que normalmente puede esperarse de un acreedor para tratar de suspender una subasta. Según indica el apelante el banco tenía interés en suspender la venta, mas no el deber de ir a Toa Alta.

Hubo alguna duda respecto a si el márshal de la corte municipal de Toa Alta pudo haber suspendido la venta sin una orden de la corte municipal. Nos inclinamos a convenir con el apelado en que el márshal debió haber suspendido la venta al ordenárselo así el banco.

El principal fundamento de esta decisión es que el banco hizo todo lo que razonablemente podía exigirse a un acreedor para suspender la subasta, especialmente al admitirse que la transacción fué celebrada solamente, según podría decirse, pocos minutos u horas antes de celebrarse la venta. Por haber dejado Arturo Izquierdo de pagar la sentencia o de comenzar antes sus gestiones para llegar a una transacción, surgió la situación embarazosa en que él se halla. El deudor fácilmente pudo haber obtenido de Campos del Toro una orden dirigida al márshal de la corte municipal de Toa Alta informándole que desistiera de celebrar la subasta o tomando alguna otra medida a última hora o antes para estar seguro

de que la subasta no era celebrada. Ambas partes tenían interés en suspender la venta y el interés de Izquierdo era mucho mayor que el del banco. Ambas partes tenían la misma facultad de previsión para darse cuenta de que el márshal procedería a celebrar la subasta si no era detenido oportunamente. Si bien es cierto que el Lic. Campos del Toro creyó erróneamente que la venta no sería celebrada, sin embargo, la corte resolvió que todas las partes envueltas en el caso actuaron de buena fe.

Ahora bien, aunque hasta cierto punto es verdad que el márshal es una especie de agente del demandante, sin embargo, hasta un punto mayor el márshal es un brazo de la corte para ejecutar sus sentencias. La ley es la que exige de un márshal que ejecute una sentencia. Todo esto lo sabían igualmente ambas partes. Podría decirse que si pudiera imputarse negligencia al banco, surgiría un caso de negligencia contribuyente por parte del demandante, no sólo al no actuar prontamente, sino también al no ir en persona a Toa Alta. El apelante insiste con razón en que el banco no tenía obligación alguna de incurrir en gastos de ninguna clase.

Tal vez la consideración principal del caso es que toda la cuestión envuelta fué un incidente desgraciado debido principalmente al dejar el deudor de moverse con más prontitud.

*Debe revocarse la sentencia y declararse sin lugar la demanda.*